UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 08-043 (HHK) |
| | : | |
| | : | |
| | : | |
| CARLOS M. URQUIDI, | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter, this memorandum in aid of sentencing of defendant Carlos M. Urquidi. As will be discussed below, the government believes that an application of the advisory Sentencing Guidelines set forth in ¶3 of the plea agreement (offense level total 15) is appropriate here.

**FACTUAL BACKGROUND**

This case arises as a result of the defendant's conduct while employed as the Financial Director of the Pan American Development Foundation (PADF). PADF is a United States Agency for International Development (USAID) contractor operating in the United States and Colombia. Each calendar year, USAID has given PADF money be used to, among other things, provide support, training and housing for Colombians who are displaced by violence. From January 2001 until May 2006, defendant Urquidi was PADF Colombia's Financial Director. As PADF's Financial Director, he had complete control over all of PADF Colombia's financial and administrative matters, to include, but not limited to, approving journal entries, preparing and mailing/submitting monthly financial statements, submitting disbursement requests, signing checks, requesting fund transfers, and reconciling PADF's check registry and bank statements.

Defendant Urquidi breached his duty of trust and misappropriated a total of $197,225.00 dollars from PADF and used that money for his personal benefit.

On February 28, 2008, the defendant pled guilty to a one count Information charging him with Theft from Program Receiving Federal Funds in violation of 18 U.S.C. §666(a)(1)(A).

## SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing Mr. Urquidi. These factors are discussed below numbered as they are in Section 3553(a).

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant.**

**(A)   Nature and circumstances of the offense**

Here, the nature and circumstances of the offense involved the defendant's multi-year continuing criminal activities of misappropriating PADF funds for his personal benefit by making false journal entries and creating false financial documents. This conduct falls squarely within the class of cases to which the applicable Sentencing Guidelines are addressed. Thus, consideration of the nature and circumstances of the offense counsel in favor of a sentence consistent with the Guidelines.

**(B) The history and characteristics of the defendant**

The defendant's history and characteristics also counsel in favor of a Guidelines driven sentence. Here, the PSR reflects that the defendant was professionally, intellectually and emotionally capable of avoiding his criminal conduct, but instead chose to engage in it intentionally and repeatedly. The PSR reflects that the defendant graduated from college, served in the United States Air Force, and completed several post-graduate credits at a university in the

2

United States. ¶ 42.  The defendant, in short, was someone who should have known better than to engage in a theft scheme.  The defendant nevertheless subsequently accepted responsibility for his crime pre-indictment and cooperated with the Pre-sentence report writer.  In the government's view, the defendant has also expressed genuine remorse for his illegal conduct.

> **(2)    The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; © to protect the pubic from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

A Guidelines based sentence is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2).  Here, as discussed above, the defendant committed a serious felony offense that spanned a period of years.  The need for deterrence of others and to promote respect for the law are also important objectives in this case that can be met by an application of the Guidelines.

As to the final consideration, there does not appear to be a need in this case to adjust the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *See* 18 U.S.C. § 3553(a)(2)(D).

**(3)  The kinds of sentences available**

The maximum term of imprisonment for this crime is 10 years, with a term of supervised release of not more than 3 years.

**(4)  The sentencing range established by the United States Sentencing Guidelines**

The Supreme Court has declared that, in terms of determining an appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 U.S. 586, 596 (2007).

Here, the government and the defendant stipulated in the plea agreement to a Total Adjusted Offense Level of 15.

The government believes that offense level 15 is appropriate based on the fact that such a sentencing level properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Id.* at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). As stated by the Supreme Court in *Kimbrough*: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.,* (quoting *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)).

In *Rita*, the Supreme Court held that an appellate court may presume that a within-Guidelines sentence is reasonable. While this presumption does not apply before the district court, *Rita*, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing Court and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.* at 2463

(emphasis in original).

Further, the advisory Guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 U.S. 586, 597 n.6.

**(5) Any pertinent policy statement issued by the USSC**

The government is unaware of any pertinent policy statements issued by the USSC.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records**

As discussed above, a Guidelines sentence would help prevent such disparities between the defendant and similar defendants.

**(7) The need to provide restitution to any victims of the offense.**

As part of his plea agreement, the defendant has agreed that the Court should issue an order of restitution for $214,800, minus $21,464 or $193,336. This amount should be paid by the defendant to PADF.

## CONCLUSION

For the foregoing reasons, the government respectfully recommends that the defendant be sentenced in accordance with the low end of advisory Guidelines level 15, Criminal History Category I, together with a three-year period of supervised release.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
For the District of Columbia

By:     \_\_\_/s/_____
LIONEL ANDRE
DC Bar #488532
Assistant United States Attorney
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-9555
Lionel.Andre@usdoj.gov

Dated: July \_\_, 2008